# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

| | |
|---|---|
| DAMON ATKINS,<br>              Appellee,<br><br>       v.<br><br>CITY OF READING, et al.,<br>              Appellants. | No. 24-2611<br><br>(E.D. Pa. No. 5:23-CV-02732-JMG) |

## **CROSS-APPELLANT'S RESPONSE TO ORDER TO SHOW CAUSE**

NOW COMES, Appellee / Cross-Appellant Damon Atkins, who files this Response in accordance with the Court's Order filed September 6, 2024.

Our response to this Order is substantially the same as our Response to the Order at Case No. 24-2466, at ECF No. 8, which is incorporated by reference. The City of Reading, Eddie Moran, Richard Tornielli, and Bradley T. McClure took an appeal at Case No. 24-2466 from the trial court's order which partially awarded summary judgment to Damon Atkins,[1] including that Bradley T. McClure was not entitled to qualified immunity under the facts and circumstances of the case. If that order is immediately appealable, then the pendent appellate jurisdiction doctrine is satisfied as to "inextricably intertwined orders or review of the non-appealable order

---

[1] Atkins' Response to Order to Show Cause, at ECF No. 8, C.A. No. 24-2466, points out why Moran and Tornielli have no standing to appeal that order inasmuch as it affected the rights of McClure.

1

where it is necessary to ensure meaningful review of the appealable order." CTF Hotel Holdings v. Marriott Int'l, 381 F.3d 131, 136 (3d Cir. 2004) (citation omitted). Conversely, if that order is *not* immediately appealable, then this Court cannot exercise pendent appellate jurisdiction. Swint v. Chambers County Commissioners, 514 U.S. 35, 51-52 (1995).

Here, Appellants / Cross-Appellees can't have it both ways. Their claimed basis for an immediately appealable order is where the trial court had refused summary judgment to Atkins as to First Amendment retaliation where McClure "legitimately, though mistakenly, believed he had probable cause" to have arrested Atkins for Disorderly Conduct. [Ex. A, slip op. at 12 (July 29, 2024)]. At Case No. 24-2466, at ECF No. 7, Appellants filed a response to the order to show cause why the summary judgment ruling was immediately appealable as to qualified immunity. Appellants told this Court the following:

> It appears it was the expectation of the District Court that every police officer would have recognized that probable cause did not exist to arrest for any crime where a protestor continued to yell and disrupt a permitted event despite orders to the contrary. The District Court also concluded that Sgt. McClure was 'undoubtedly in a difficult situation . . . tasked with maintaining order' when confronted with two groups with opposing viewpoints ***and that he legitimately, though mistakenly, believed he had probable cause***. Yet the District Court's order did not factor this conclusion into its qualified immunity analysis.

[Ex. B, at 16-17 (emphasis added)]. Quoting the same portion of the trial court's opinion, whether McClure "legitimately, though mistakenly, believed he had

2

probable cause" to arrest, Appellants told the Court this was a "misapplication of the law regarding qualified immunity," warranting an immediate appeal. [Id. at 6].

That the trial court refused to award summary judgment to Atkins on the basis that McClure "legitimately, though mistakenly, believed he had probable cause" to arrest for Disorderly Conduct is the very thing we want reviewed by this Cross-Appeal, if the Court should determine that the order was immediately appealable as Appellants have urged. Appellants conceded before the trial court, as they must, that Atkins' religious speech was protected under the First Amendment of the U.S. Constitution. Briefly stated, Sgt. Bradley T. McClure arrested Damon Atkins during daytime hours on June 3, 2023 on the southside of Washington Street, opposite of City Hall in the City of Reading, for the offense of Disorderly Conduct, 18 Pa.C.S. § 5503(a)(1). The Reading Pride Celebration had obtained a permit for a flag-raising ceremony, following by a march to City Park, in celebration of the LGBTQ community. But at the time of Atkins' arrest, the event had not yet started and no one acknowledged Atkins, much less complained about him. With event attendees standing on the northside of Washington Street, and Atkins and other Christian protesters standing on the southside, Atkins (1) projected his voice, without any equipment, so as to be heard by the event attendees on the northside and (2) said, "Yo, God is not—" before Sgt. McClure lunged at him and arrested him mid-sentence (if he had been permitted to finish his own sentence, Atkins was trying to

3

paraphrase 1 *Corinthians* 14:33 from the Bible, to the effect, "Yo, God is not the author of confusion but of peace").

Applying clearly-established precedents, the trial court reasoned as follows. First, that by not allowing the Christian protesters to verbally speak before the event had begun would render public debate "virtually impossible," and by arresting Atkins mid-sentence based on McClure's "personal opinion of what plaintiff *would have said* and the reaction it *would have received*" had worked an unconstitutional "prior restraint." [Exhibit A, slip op. at 9 n.6]. That the event attendees would regard Atkins' speech as offensive was not, standing alone, a basis to silence him. [Id.]. For purposes of Disorderly Conduct, "It cannot be said that merely amplifying your voice to be heard by your audience, prior to the start of any permitted event, is unreasonable and in violation of the law." [Id. at 10 n.7]. Therefore, for purposes of qualified immunity, "A reasonable officer would know that prohibiting a protestor from speaking prior to the commencement of a permitted event, when the protestor was across the street from the crowd, and members of the crowd did not acknowledge the protestor, violates the speakers First Amendment rights." [Id. at 17]. By the same token, the trial court concluded that McClure had no probable cause under the Fourth Amendment to have made the warrantless arrest of Atkins for Disorderly Conduct. [Id. at 13].

Finally, McClure had raised a false narrative, expressly contradicted by two

videos of the event as well as Atkins' deposition testimony. McClure erroneously claimed that Atkins was somehow, previously "yelling" unknown things at the event attendees before McClure had warned and subsequently arrested him. The trial court determined that, even assuming the truth of the matter, it does nothing to rescue an unconstitutional prior restraint where, "Yo, God is not—" was protected speech. [Exhibit A, slip op. at 17-18]. In the Police Report, McClure made a false statement that Atkins "began to yell to the people at the event" *before* he was warned by McClure, and, "Less than a minute later [Atkins] resumed yelling derogatory comments to the people at the event." [Exhibit B ¶¶ 29-30]. During his deposition, Sgt. McClure admitted, "I don't recall" what Atkins allegedly said that was derogatory and prior to the warning. [Id. ¶ 31(c)].

If Appellants can demonstrate the summary judgment ruling is immediately appealable as to qualified immunity, then the Court also must hear our claim under the pendent appellate jurisdiction whether the trial court erred by refusing to award summary judgment as to liability on Atkins' First Amendment retaliation claim. At summary judgment, the trial court ruled in favor of Atkins as to liability for a Fourth Amendment violation (arresting for Disorderly Conduct without probable cause), that Atkins' speech was protected under the First Amendment, and that McClure was not entitled to qualified immunity. But then the trial court denied summary judgment on liability for a First Amendment violation, reasoning that McClure may

5

defend whether he "conducted the arrest because he legitimately, though mistakenly, believed he had probable cause to do so." [Exhibit A, slip op. at 12 (citing Primrose v. Mellott, 2012 U.S. Dist. LEXIS 84594, at *1 (M.D. Pa. 2012))]. The standard for pendent appellate jurisdiction is satisfied as to "inextricably intertwined orders or review of the non-appealable order where it is necessary to ensure meaningful review of the appealable order." CTF Hotel Holdings v. Marriott Int'l, 381 F.3d 131, 136 (3d Cir. 2004) (citation omitted). That's shown where "the District Court took away with one hand the very thing it awarded with the other." Id. at 139.

That standard is met here. Whether McClure was reasonably mistaken as to probable cause for arresting Atkins for Disorderly Conduct is subsumed within qualified immunity whether a reasonable police officer would have believed there was probable cause for arresting Atkins for Disorderly Conduct. "The Fourth Amendment tolerates only *reasonable* mistakes, and those mistakes — whether of fact or of law — must be *objectively* reasonable. We do not examine the subjective understanding of the particular officer involved." Heien v. North Carolina, 574 U.S. 54, 66-67 (2014) (emphasis in original). Likewise, qualified immunity is had "if reasonable officials in the defendants' position at the relevant time could have believed, in light of clearly established law, that their conduct comported with established legal standards." Stoneking, 882 F.2d at 726. The test, therefore, is the same: What a reasonable police officer knew, or should have known, under then-

existing legal precedents. Where the trial court ruled that a reasonable police officer knew, or should have known, that the First Amendment protected Atkins' speech and conduct and there was no probable cause to have arrested him for Disorderly Conduct, then there's likewise no genuine issue of material fact under <u>Heien</u>. Moreover, even though not binding on this Court, it bears mention that <u>Primrose v. Mellott</u>, 2012 U.S. Dist. LEXIS 84594, at *1 (M.D. Pa. 2012), as cited by the court below, involved a case where there *was* a genuine issue of material fact whether the Section 1983 plaintiff committed Disorderly Conduct. As such, the *Primrose* Court reasoned that probable cause was also a defense against a First Amendment retaliation claim. <u>Primrose</u>, therefore, also shows the trial court erred in our case by withholding summary judgment from Atkins.

The trial court subsequently issued a memorandum on August 29, 2024. It claims that its ruling on First Amendment retaliation had meant that McClure can raise a defense that he lacked subjective motivation to retaliate, despite arresting Atkins mid-sentence as a prior restraint (and despite all his admissions by deposition that he made his decision based on Atkins' viewpoints), because McClure committed an *<u>unreasonable</u>* mistake of law. [Ex. C, slip op. at 3 n.1 (explaining that its summary judgment ruling used the word "legitimately," which had meant "'honestly,' as opposed to 'reasonably.'")]. The trial court's memorandum demonstrates why pendent appellate jurisdiction is appropriate here and reversal is warranted.

7

Appellants did not argue in the court below for, and no court in any jurisdiction has permitted, *unreasonable* mistake of law defenses as to liability for First Amendment retaliation.² This turns the U.S. Supreme Court's decision in Heien upside down because the "Fourth Amendment tolerates only *reasonable* mistakes," whether of fact or law, and the same "must be *objectively* reasonable." Heien, 574 U.S. at 66-67 (emphasis in original). "We do not examine the subjective understanding of the particular officer involved." Id.

The decision in Heien was the U.S. Supreme Court's compromise on the general principle that "[i]gnorance of the law is no excuse." See Heien, 574 U.S. at 67. The Court was convinced that its allowance of objectively reasonable mistakes of law will not "discourage officers from learning the law." Id. at 66. U.S. courts of appeal have followed Heien and held that where the plaintiff's "First Amendment free speech claim arises from her arrest and is inextricable from her Fourth Amendment claim, liability for both rises and falls on whether the officers violated clearly established law under the Fourth Amendment." Villarreal v. City of Laredo, 94 F.4th 374, 385 (5th Cir. 2024) (citing Sause v. Bauer, 585 U.S. 957, 959 (2018)). The U.S. Supreme Court agrees that when a police officer interrupts activity protected under the First Amendment and this "is alleged to have occurred during

---

² Atkins moved for summary judgment as to liability only, leaving trial for the question of damages, including punitive damages.

the course of investigative conduct that implies Fourth Amendment rights, the First and Fourth Amendment issues may be inextricable." Sause, 585 U.S. at 959. Therefore, for purposes of First Amendment retaliation, police officers are held to the same "fair leeway to make reasonable mistakes of law and fact." Villarreal, 94 F.4th at 390 (citing Heien, 574 U.S. at 61).

The U.S. Supreme Court explained the interplay between First Amendment retaliation and Fourth Amendment probable cause to arrest, in Nieves v. Bartlett, 587 U.S. 391 (2019). The Court agreed with the police officers in that case that plaintiffs have the same burden in First Amendment retaliation of proving that no probable cause existed for an arrest. Id. at 401. The Court reasoned:

> [L]ike retaliatory prosecution cases, evidence of the presence of absence of probable cause for arrest will be available in virtually every retaliatory arrest case. And because probable cause speaks to the ***objective reasonableness*** of the arrest, its absence will . . . generally provide weighty evidence that the officer's animus caused the arrest, whereas the presence of probable cause will suggest the opposite.

Id. at 401-02 (emphasis added). Similar to Heien, the Court agreed that, for purposes of First Amendment retaliation, that mistakes of law must sound in "objective reasonableness." Id. The Court has also consistently rejected any suggestion that the First Amendment employs a different standard for probable cause than the Fourth Amendment. New York v. P. J. Video, Inc., 475 U.S. 868, 875 (1986) (application for a warrant authorizing the seizure of materials "presumptively protected by the First Amendment should be evaluated under the same standard of probable cause

used to review warrant applications generally.").

Here, McClure arrested Atkins <u>mid-sentence</u> and for the very act of speaking, eliminating any room for disagreement whether there was a "causal link" between the constitutionally protected conduct and the retaliatory action. <u>Thomas v. Independence Township</u>, 463 F.3d 285, 296 (3d Cir. 2006). This was not a case where the plaintiff was arrested for unrelated conduct, but for the very act of speaking. It is reversible error for the trial court to say that McClure can defend his violation of Atkins' First Amendment rights by unreasonably violating Fourth Amendment rights. Whether McClure could have raised an unreasonable mistake of law as a defense, he certainly cannot have done so as to liability for First Amendment retaliation. Atkins had sought summary judgment for liability only, leaving trial for damages, including punitive damages.

Finally, this Cross-Appeal is unlike <u>Montgomery County Commissioners v. Montgomery County</u>, 215 F.3d 367 (3d Cir. 2000). There, pendent appellate jurisdiction was not met on the other summary judgment issues because the "non-immunity claims depend on questions of fact that the District Court has yet to resolve." <u>Id.</u> at 376. Not so here. As shown above, the trial court, reviewing incontrovertible physical facts such as videos of the incident, determined that the permitted event had not begun and Atkins was not "yelling." Appellants conceded that his speech was constitutionally protected.

Yet, the court below gave with one hand and took away with the other, improperly denying Atkins relief and furthering a system where government defendants can go to trial, having no defense to liability other than an attempt at confusing the jury on the law where presented with unpopular speech. The judiciary's duty to support rights secured by the U.S. Constitution cannot devolve into an injustice of constantly giving government wrongdoers an out. That's why the remedy of judgement as a matter of law exists. This Court can either summarily dismiss the appeal at Case No. 24-2466 as not immediately appealable or, alternatively, find that it is but rule in favor of Atkins that qualified immunity cannot be raised on this record and proceed to reverse the trial court, under the pendent appellate jurisdiction, for improperly permitting McClure a second bite at the apple, contrary to the trial court's own holding that no reasonable police officer can conclude there was probable cause to arrest Atkins for Disorderly Conduct. Here, the only jury questions relate to the amount of damages, including punitive damages, not liability. There's no outcome where Appellant McClure prevails on liability.

    Respectfully submitted,

    **CORNERSTONE LAW FIRM, LLC**

Dated: September 24, 2024    By:   /s/ Joel A. Ready
    Joel A. Ready, Esquire
    PA Attorney I.D. # 321966
    8500 Allentown Pike, Suite 3
    Blandon, PA 19510
    (610) 926-7875